UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
THE TRUSTEES OF THE LOCAL 138             ECF
PENSION TRUST FUND and THE
LOCAL 138 PENSION TRUST FUND,

                               Plaintiffs.

       - against -

                                                             24-CV-3188-GRB-JMW

LJ DELIVERY, INC. d/b/a L&J TRUCKING and
TONY COSME,

                               Defendants
--------------------------------------------------------------------x

## PLAINTIFFS' MEMORANDUM OF LAW
## IN SUPPORT OF THEIR MOTION
## FOR A DEFAULT JUDGMENT

                                                             CARY KANE PLLC
                                                             Attorneys for Plaintiffs
                                                             1350 Broadway.
                                                             Suite 1810
                                                             New York, NY 10018

## INTRODUCTION

Plaintiffs, the Local 138 Pension Trust Fund and the Trustees thereof, (the "Fund"), move for a default judgement against Defendant LJ Delivery, Inc. d/b/a L&J Trucking ("LJ") based on its failure to appear in this action after being properly served. The Clerk of Court entered LJ's default on March 3, 2025. The amounts sought in this action remain unpaid.

This memorandum will explain why the Court should grant a default judgment against LJ and award the Fund all the damages it seeks.

## BACKGROUND FACTS

At all relevant times, LJ was bound to a collective bargaining agreement ("CBA") with Local 802 of the International Brotherhood of Teamsters (the "Union") which set forth the terms and conditions of employment for bargaining unit employees of LJ who were represented by the Union. [1]Affidavit of Kelli McInnis at paragraphs 6,7 ("McInnis Aff"). The CBA required LJ to remit monthly contributions to the Fund for all eligible employees covered by the CBA. McInnis Aff. at paragraph 8.

Despite its obligations under the CBA, LJ ceased paying contributions to the Fund in May 2023. McInnis Aff. at paragraph 9. It then ceased operations and terminated its participation in the Fund, incurring withdrawal liability under Section 4201 of ERISA, *29 U.S.C. § 1381*, et seq. McInnis Aff. at paragraph 10.

The Fund's actuary determined that LJ incurred withdrawal liability in the amount of $1,977,839 which was payable in 80 quarterly installments of $9,635 each. McInnis Aff. at paragraph 12. In accordance with Section 4219 of ERISA, *29 U.S.C. § 1399*, LJ was notified of the

---

[1] As explained in the affidavit of Kelli McInnis, LJ was known to the Fund as L&J Trucking, Inc. from 2003, when it began participating in the Fund as an employer through 2023 when it ceased operations.

1

withdrawal liability and payment schedule, which it then ignored. McInnis Aff. at paragraphs 13,16. Notably, LJ did not timely request review of any specific matter related to the determination of withdrawal liability or identify any inaccuracy in the determination of unfunded vested benefits in accordance with Section 4219(b)(2) of ERISA, *29 U.S.C. §1399(b)(2)*. Nor did it initiate arbitration of the withdrawal liability assessment under Section 4221(a) of ERISA, *29 U.S.C. §1401(a)*. It thus waived its right to contest the withdrawal liability assessment under Section 4221(b) of ERISA,*29 U.S.C. §1401(b)*. McInnis Aff. at paragraph 14.

After LJ failed to make the first quarterly payment of withdrawal liability, the Fund sent it a notice of default with a warning that if the default was not cured in 60 days, the Fund would institute legal action to recover the unpaid withdrawal liability, interest, liquidated damages, legal fees and costs. The letter further demanded payment of the unpaid contributions owed for the period May 2023 through October 2023, plus interest. [2] Exhibit B to McInnis Aff.

LJ did not cure the default and, therefore, is liable to the Fund for the entire amount of its withdrawal liability and attendant damages. Section 4219(c)(5) of ERISA, *29 U.S.C. §1399(c)(5).z* It remains liable to the Fund for the unpaid contributions as well. McInnis Aff. at paragraphs 18,19.

## DISCUSSION

THE FUND'S MOTION FOR A DEFAULT JUDGMENT SHOULD BE GRANTED

A. <u>LJ's Failure to Appear or Answer in This Action is Grounds for Judgment Against It</u>

Since L&J failed to appear, plead or defend in this matter and the Clerk of Court entered its default, the Fund may seek a default judgment pursuant to Rule 55(b) of the Federal Rules of Civil Procedure ("FRCP"). The Court should grant the default judgment if LJ, having notice of the

---

[2] The demand letter misstated the amount owed to the Fund for delinquent contributions. The Fund is owed $3,203.20 in such contributions. McInnis Aff. at paragraph 20 fn.1.

2

action and an opportunity to defend against it, failed to respond to the Complaint. See, *Allstate Ins. Co. v. Nazarov*, 2015 U.S. Dist. LEXIS 134481 at *18 (E.D.N.Y. May 19, 2015).  LJ had notice of this action as it was properly served.  LJ had opportunity to defend against the Fund's claims by filing an answer or motion with this court during the time period it was provided to do so. LJ's failure to respond to the Complaint justifies the granting of a default judgment against LJ.

Three factors are often considered in deciding a motion for a default judgment: (1) whether the default was willful, (2) whether ignoring the default would prejudice the opposing party, and (3) whether the defaulting party has presented a meritorious defense.  All three factors support the Fund's request for judgment against LJ.

The first factor, willfulness, is found here by LJ's failure to respond to the Fund's Complaint. *See, Nazarov* at *20-21 ("a defendant's failure to respond to the complaint is sufficient to demonstrate willfulness.").  The second factor, prejudice, exists because the Fund has no avenue other than this action by which to obtain the monies owed to it by LJ. *See, SEC v. Cattlin,2024 U.S. Dist. LEXIS 41428 at 13* (E.D.N.Y. Mar. 8,2024)*; *Nazarov* at *21-22.  As for whether LJ has asserted a meritorious defense, where, as here, a defendant has failed to answer the complaint, "courts are unable to make a determination whether the defendant has a meritorious defense to the plaintiff's allegations, and, accordingly, this factor weighs in favor of granting a default judgment." *Joseph v. HDMJ Rest. Inc.,* 970 F. Supp.2d 131, 143 (E.D.N.Y. 2013).

B.  <u>The Factual Allegations in the Complaint are Sufficient to State a Claim</u>

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. Id at 141. The following well-pleaded factual allegations are stated in the Complaint:

- At all relevant times, LJ was an employer that participated in the Fund and contributed to the Fund for those of its employees covered by collective bargaining agreements between LJ and Local 138 IBT (the "Union").

- LJ ceased operations in or about October 2023. At that time, LJ permanently ceased to have an obligation to make contributions to the Fund and/or ceased all covered operations under the Fund, causing a complete withdrawal from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a). As a result, LJ incurred withdrawal liability within the meaning of Section 4201 of ERISA, 29 U.S.C. § 1381, et seq.

- At the time LJ ceased operations, it had failed to pay contributions owed to the Fund for the months of May 2023 through October 2023.

- Plaintiffs requested that the Fund's actuary determine, pursuant to Section 4213 of ERISA, 29 U.S.C. § 1393, the withdrawal liability owed by LJ to the Fund. The Fund's actuary determined that LJ owed the Fund withdrawal liability in the amount of $1,977,839.

- Pursuant to Section 4219(b)(1) of ERISA, 29 U.S.C. § 1399(b)(1), and by letter dated February 12, 2024, which was sent via certified mail with return receipt, the Fund notified LJ that withdrawal liability was due to the Fund in the amount of $1,977,839 and was payable in 80 quarterly payments of $9,635 each. The first quarterly payment was due on February 15, 2024. The Fund demanded that the quarterly payments be made accordingly.

- LJ did not timely request review of any specific matter related to the determination of withdrawal liability or identify any inaccuracy in the determination of unfunded vested

4

- benefits in accordance with Section 4219(b)(2) of ERISA, 29 U.S.C. §1399(b)(2), or initiate arbitration of the withdrawal liability assessment as permitted by Section 4221(a) of ERISA, 29 U.S.C. §1401(a). Under Section 4221(b)(1) of ERISA, 29 U.S.C.§ 1401(b)(1), LJ waived its right to contest the withdrawal liability assessment by failing to timely initiate arbitration.

- LJ failed to make the first quarterly withdrawal liability payment or pay the contributions due.

- By letter dated February 23, 2024, the Fund notified LJ that it was in default of its quarterly payments and that, if the default was not cured in 60 days, the Fund would institute legal action to recover the unpaid withdrawal liability, interest, liquidated damages, and the costs of collection. The Fund's letter also noted that the Funds would seek the unpaid contributions, plus interest, liquidated damages, and the costs of collection in such legal action if these were not paid.

- Defendants did not cure LJ's default or pay the delinquent contributions and are thus liable to the Fund for the entire amount of the withdrawal liability and all unpaid contributions.

Since these allegations, if taken as true, state a cognizable claim against LJ, this Court should grant the Fund's motion for a default judgment.

### C. This Court can Award the Damages Sought Without an Inquest

A Court is not required to hold an evidentiary hearing to determine the amount of a party's damages. *Fustok v. Conticommodity Services, Inc.*, 873 F.2d 38, 40 (2d Cir. 1989). An evidentiary hearing is not needed where affidavits and other documents provide a basis for the damages

5

awarded. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997).

Here, specific documentary evidence has been presented in the form of the Fund Manager's affidavit, counsel's declaration, and the exhibits. This evidence proves the amounts owed by LJ for unpaid contributions, as well as the bases and calculations for the interest, liquidated damages, attorneys' fees and costs claimed by the Fund. Thus, no inquest is needed.

    D.    <u>The Fund Should be Awarded All Monies Sought Herein with Accrued Interest, Liquidated Damages, Attorneys' Fees and Costs</u>

        1.    *The Fund is Entitled to All Contributions and Withdrawal Liability Claimed*

Section 515 of ERISA, 29 U.S.C. §1145 requires employers that participate in multiemployer plans to pay contributions in accordance with plan terms. For purposes of this mandate, Section 4301 of ERISA, 29 U.S.C. §1451(b), provides that unpaid withdrawal liability shall be treated as a delinquent contribution.

Pursuant to ERISA and the CBA under which LJ was bound, LJ was required to remit monthly contributions to the Fund. LJ failed to make the contributions required of it, thus violating both ERISA and the terms of its CBA. The Fund is legally entitled to judgment for those contributions.

The Fund is also entitled to all Withdrawal Liability claimed. As is shown above, the Fund properly assessed withdrawal liability against LJ and demanded payment thereof. LJ's failure to respond to that demand resulted in a default that was not timely cured and cannot now be disputed. Thus, the Fund is entitled to judgment for withdrawal liability in the claimed amount of $1,977,839.

    2.    *The Fund is Entitled to All Interest Claimed*

Section 502(g)(2) of ERISA, *29 U.S.C. §1132(g)(2),* provides for judgment in the Fund's favor to include interest under the rate determined in section 6621 of title 26. As of January 2025, the prescribed rate of interest as per section 6621 is 8.2% per annum (January 2025 short term rate of 5.2% + 3 percentage points). Interest awarded to ERISA plans should be calculated from the date a missed payment first becomes due. *Trs. of the Soft Drink v. Ditmars Distribs., Inc*., 2021 U.S. Dist. LEXIS 123165 at *13, 20-CV-2317 (E.D.N.Y. June 30, 2021).

LJ became liable for the entire assessment of withdrawal liability on April 23, 2024, 60 days after the Fund, by counsel, sent it a notice of default warning that such liability would result if it did not remit the first quarterly payment to the Fund. Thus, the Fund is entitled to interest on the withdrawal liability at a rate of 8.2% per annum from April 23, 2024 through the date of payment.

In accordance with ERISA, the Fund is also entitled to interest on the unpaid contributions from the date(s) each payment was due through the date(s) of payment. As of March 25, 2025 owes the Fund $ $152,354.82 in interest on the unpaid withdrawal liability and contributions. MsInnis Aff. at paragraph 25.

    3.    *The Fund is Entitled to All Liquidated Damages Claimed*

Section 502(g)(2) of ERISA, *29 U.S.C. §1132(g)(2),* provides for judgment in the Fund's favor to include liquidated damages equal to the amount of interest. In accordance Section 502(g)(2), the judgment awarded to the Fund should include liquidated damages equal to the amount of interest assessed.

    4.    *The Fund is Entitled to Reimbursement of its Attorneys' Fees and Costs*

The Fund is entitled to reasonable attorneys' fees and costs for this proceeding as provided for under Section 502(g)(2) of ERISA, *29 U.S.C. §1132(g)(2)*. See, *Tr. Of Local 138, 138A &138B*

*Intern. Union of Operating Eng'rs Welfare Fund v. Bimasco, Inc.*, 2016 U.S. Dist. LEXIS 110372 at *3 (E.D.N.Y. Aug. 17, 2016), *adopted*, 2016 U.S. Dist. LEXIS 110372 (E.D.N.Y. Sept. 30, 2016).

The billing slips included herewith (*Exhibit D to McInnis Aff.*) describe the legal services provided in this case and are based on records maintained contemporaneously with the work performed. Counsel has billed 16.9 hours for this matter, at a rate of $500 per hour for work performed by Susan Bruno, a partner in the firm. Ms. Bruno has over 20 years' experience in ERISA litigation and routinely handles matters for the Fund. *Bruno Decl. at paragraphs 19-21*.

Ms. Bruno's work in this case includes drafting the summons and complaint, drafting the documents required to obtain a Certificate of Default, and researching and drafting the Fund's Motion for a Default Judgment, including the Fund Manager's affirmation, her own declaration, a memorandum of law, a statement of damages and a proposed order. *Bruno Decl. at paragraph 22*.

The firm of Cary Kane PLLC regularly provides legal advice and representation to the Fund. and bills the Fund at a set hourly rate for all work performed. *Bruno Decl. at paragraph 18*.

In terms of the hourly rates billed by counsel, in *Arbor Hill Concerned Citizens Neighborhood Ass'n. v. County of Albany*, 522 F.3d 182 (2d Cir. 2007), the Second Circuit defined a reasonable hourly rate as the rate a "reasonable, paying client" would be willing to pay. A court should consider current, rather than historical hourly rates in the community where the case was heard for attorneys of comparable skill, reputation and practice area, as well as the rates counsel typically charges, and the court's knowledge of rates charged in the jurisdiction. Moreover, courts must expect that average awards will increase over time. *Lewis v. Am. Sugar. Ref. Inc.*, 2019 U.S. Dist. LEXIS 18058 at *4 (S.D.N.Y. Jan 4, 2019).

8

The Fund retained Cary Kane for this matter because it believed that the firm had the ability and experience to handle whatever might be necessary for this case. While this case turned out to be a simple matter due to Defendants' default, the Fund could not predict this in advance. Rather than retaining a less experienced and less expensive firm which had no institutional knowledge of the Fund' employees, contracts and procedures, the Fund prudently retained counsel that was knowledgeable about its operations and which the Fund fully trusted to handle any issues or disputes that might arise during litigation with Defendants. *McInnis Aff at paragraph 34.* These case specific factors support an award of attorneys' fees at the firm's billed rates.

The rates charged by counsel are reasonable for attorneys of comparable skill, reputation and practice area who are capable of handling any issues or matters that may arise during the course of a legal action against a former contributing employer and a trial, if necessary. In addition, the rates submitted to this Court are the rates that counsel typically charges the Fund. Under the *Lewis* court's analysis, the rates should be accepted as reasonable.

In addition to the attorneys' fees, The Fund incurred costs of $1,476.02 in this litigation, representing the $405 filing fee for opening this case, and $1,071.02 for service of process. See, *Exhibit D.*

## **CONCLUSION**

For the reasons set forth herein, this Court should award the Fund judgment against LJ for all monies owed, with interest, liquidated damages, attorneys' fees and costs.

Dated: New York, New York
      March 21, 2025

                                          Respectfully Submitted,
                                          CARY KANE PLLC

                                          By: ____/s/_____
                                             Susan Bruno

>Attorneys for Plaintiffs
>1350 Broadway.
>Suite 1810
>New York, NY 10018

10