**FILED**
**CLERK**

**11/19/2025**

**U.S. DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**LONG ISLAND OFFICE**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
THE TRUSTEES OF THE LOCAL 138 PENSION
TRUST FUND and THE LOCAL 138 PENSION
TRUST FUND,

              *Plaintiffs*,

              -against-

L&J TRUCKING, INC., LYDIA COSME,
TONY COSME, and LJ DELIVERY, INC. d/b/a
L&J TRUCKING,

              *Defendants*.
------------------------------------------------------------X

**REPORT AND**
**RECOMMENDATION**
2:24-cv-03188 (GRB) (JMW)

**A P P E A R A N C E S:**

Susan M. Bruno
**Cary Kane PLLC**
1350 Broadway, Suite 1410
New York, NY 10018
*Attorney for Plaintiffs*

*No Appearance by Defendants*

**WICKS,** Magistrate Judge:

      Plaintiffs The Trustees of the Local 138 Pension Trust Fund ("Trustees") and The Local

138 Pension Trust Fund ("Fund") (collectively, "Plaintiffs") commenced this action against L&J

Trucking, Inc. and principal officers of L&J Trucking, Lydia and Tony Cosme, on April 29,

2024, asserting claims of breach of a collective bargaining agreement ("CBA") and seeking to

enforce the requirements of the Employee Retirement Income Security Act ("ERISA"), §515, 29

U.S.C. § 1145, and §502, 28 U.S.C. §1132, *et seq.* (*See generally* ECF No. 1.) Namely, Plaintiffs

assert causes of action for: (1) unpaid contributions to the Fund in violation of ERISA §§ 502

and 515, 29 U.S.C. §§1132 and 1145, and §502, 28 U.S.C. §1132(g)(2), *et seq.*; (2) unpaid

withdrawal liability to the Fund pursuant to ERISA § 4219(c)(5), 29 U.S.C. §1399(c)(5), and 502(g)(2) and 4201(b), 29 U.S.C. § 1132(g)(2) and 1451(b); and (3) unpaid contributions from Lydia and Tony Cosme. (*Id.*) On January 10, 2025, Plaintiffs filed an Amended Complaint asserting the same causes of action but only as against LJ Delivery Inc. d/b/a L&J Trucking ("L&J") and Tony Cosme. (ECF No. 12.)

On referral from the Honorable Gary R. Brown is Plaintiffs' motion for default judgment (ECF No. 19) which seeks the following relief: (1) $1,981,042.20 for withdrawal liability and unpaid contributions; (2) interest awarded on withdrawal liability and unpaid contributions at 8.2% per annum from dates due to date of judgment; (3) liquidated damages equal to the amount of interest; (4) $8,450 in attorneys' fees; and (5) $1,476.02 in costs related to this action.  (ECF No. 19-9.)

For the following reasons, the undersigned respectfully recommends that the District Judge **GRANT** Plaintiffs' motion (ECF No. 19) and award the damages as set forth below.

## BACKGROUND

### A. *Factual Background*

The Fund is a "multiemployer" pension benefit plan that provides benefits to eligible employees and their dependents. (ECF No. 12 at ¶ 6.) The Trustees are the "plan sponsor" of the Fund and serve as "fiduciaries" of the Fund. (*Id.* at ¶ 7.)  L&J was an "employer" and a domestic corporation with its place of business in New York. (*Id.* at ¶¶ 8-9.) Tony Cosme is the current principal officer of L&J and resides in New York. (*Id.* at ¶¶ 2, 9-10.) Plaintiffs allege that L&J is required to make contributions to the plan on the employees' behalf pursuant to the CBA between L&J and Local 138 IBT (the "Union"). (*Id.* at ¶ 12.) Per the CBA's terms, L&J was

required to remit monthly contributions to the Fund for all eligible employees covered by the CBA. (ECF No. 19-1, McInnis Aff. at ¶¶ 8, 10.)

In October of 2023, L&J "ceased operations" at which point L&J "permanently ceased to have an obligation to make contributions to the Fund and/or ceased all covered operations under the Fund . . . ." (ECF No. 12 at ¶ 12.) At the time of its cessation of operations, L&J "failed to pay contributions owed to the Fund for the months of May 2023 through October 2023 totaling $13,305.60." (*Id.* at ¶ 13.) Additionally, Plaintiffs assert that L&J incurred, and thus Plaintiffs were entitled to, withdrawal liability in the amount of $1,977,839[1] under ERISA § 4201, 29 U.S.C. § 1381, *et seq*. (*Id.* at ¶¶ 14, 15.)

Consequently, on February 12, 2024, the Fund sent a demand letter to L&J for withdrawal liability pursuant to ERISA § 4219(b), 29 U.S.C. § 1399(b)(1), outlining the amount L&J owed and explaining the first of many quarterly payment would be due February 15, 2024. (*Id.* at ¶ 15.)  L&J failed to make timely payment. (*See id.* at ¶ 18.)  On February 23, 2024, the Fund sent a notice of default and demand of payment letter to L&J regarding the unpaid contributions and unpaid withdrawal liability, noting the Fund would institute legal action to recover these outstanding payments if the default was not cured within 60 days. (*Id.* at ¶ 19.) L&J failed to respond. (*See id.* at ¶ 20.) To date, L&J has neither paid the unpaid contributions nor made payments towards the withdrawal liability. (*Id.* at ¶¶ 22.) Plaintiffs further aver that if Tony Cosme, as L&J's principal, received assets upon L&J's dissolution, he is liable as an existing creditor for all corporate property distributed to him upon L&J's dissolution. (*Id.* at ¶¶ 30-31.)

---

[1] This amount was determined by the Fund's actuary pursuant to Section 4213 of ERISA, 29 U.S.C. 1393. (ECF No. 12 at ¶ 14; ECF No. 19-1, McInnis Aff. at ¶¶ 11-12.)

**B.  *Procedural History***

The Complaint was filed on April 29, 2024 (ECF No. 1), and service was returned executed on June 24, 2024 and L&J Trucking Inc.'s answer was due on or before July 12, 2024. (ECF No. 6.)  L&J Trucking failed to answer or otherwise respond to the complaint.  On July 31, 2024, Plaintiffs requested a certificate of default as against L&J (ECF No. 7) which was entered by the Clerk of Court on the same day. (ECF No. 8.) The undersigned then directed Plaintiffs to file their motion for default judgment in accordance with the Hon. Gary R. Brown's rules on or before August 30, 2024. (Electronic Order dated August 1, 2024). Plaintiffs filed their motion for default judgment against L&J on August 14, 2024 (ECF No. 9) and the following day Judge Brown referred Plaintiffs' motion to the undersigned for a Report and Recommendation. (Electronic Order dated August 15, 2024.)

The Court subsequently indicated that in the Complaint, "express references" were made that the corporate defendant that Plaintiffs sought default judgment against "has been dissolved" but no date of dissolution has been provided. (Electronic Orde dated January 3, 2025) (citing ECF No. 1 at ¶¶ 31-34.) Critically, according to N.Y. Bus. Corp. Law § 1006(b), "a plaintiff may pursue any remedy available ... against a dissolved corporation ... for any right or claim existing or any liability incurred *before* such dissolution." (*Id.* (emphasis in original)). As such, the parties were directed to "supplement their motion for default judgment by filing a declaration with supporting proof of when the dissolution of the corporate defendant occurred." (*Id.*) Plaintiffs, on January 7, 2025, filed their supplemental letter stating that LJ Delivery, Inc. legally succeeded L&J Trucking, Inc., an entity that dissolved in October 2009. (*See* ECF No. 10.) Accordingly, the undersigned denied Plaintiffs' motion for default judgment without prejudice and with leave to renew while also granting Plaintiffs' request to amend their complaint to name

LJ Delivery, Inc. d/b/a/ L&J Trucking Inc. as a defendant. (Electronic Order dated January 8, 2025.)

Plaintiffs' Amended Complaint was filed on January 10, 2025 and was served upon L&J on January 14, 2025, with its answer due February 4, 2025. (ECF Nos. 14-15.) Plaintiffs then filed their request for a Certificate of Default on February 28, 2025 (ECF No. 17) and the Clerk entered default against L&J on March 3, 2025. (ECF No. 18.) Plaintiffs renewed motion for default judgment was then referred to the undersigned for a Report and Recommendation by Judge Brown. (ECF No. 19.) Upon preliminary review of Plaintiffs' renewed motion, the Court noted that the submission violated Local Rule 55.2(c) since it did not include a certificate of service stating that all documents in support of the request for default judgment, have personally served on, or mailed to the last known residence of the party against whom default judgment is sought. (Electronic Order dated March 28, 2025.) Plaintiffs have since provided this supplemental documentation. (ECF Nos. 20-22.) To date, L&J has not appeared in this action.

## LEGAL FRAMEWORK

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, as here, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action. *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.1(b) and 55.2. After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2. The decision to grant a motion for default is left to the discretion of the district court. *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016). Given that

the Clerk has already entered default against L&J (ECF No. 8), the Court is primarily concerned with Plaintiffs compliance with E.D.N.Y. Local R. 55.2.

A default constitutes an admission of all well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992). However, a plaintiff must still demonstrate that the allegations set forth in the Complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) ("[A] district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment) (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The Court, thus, must ensure: (i) Plaintiffs satisfied all required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; and (ii) Plaintiffs allegations, when accepted as true, establish liability as a matter of law. *See Finkel*, 577 F.3d at 84.

## DISCUSSION

### I.    Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion.  E.D.N.Y. Local R. 7.1(a)(1)--(3).  Local Civil Rule 55.2 requires that a party moving for default judgment append to its application an affidavit or declaration demonstrating that (A) the Clerk has entered default against the Defendants, (B) the movant has complied with the SCRA, and (C) that the individual defaulting defendant is not a minor or incompetent person, as well as all papers required by E.D.N.Y. Local Rule 7.1 (*supra*), and a proposed judgment and certificate of service that all documents in connection with the motion for default judgment has been personally served on or mailed to the defaulting defendants'

residence or business address.  E.D.N.Y. Local R. 55.2(a)(1)—(3). Recently added under the Local Rules is that the moving party "must file a statement of damages, sworn or affirmed to by one or more people with personal knowledge, in support of the request, showing the proposed damages and the basis for each element of damages, including interest, attorney's fees, and costs."  E.D.N.Y. Local R. 55.2(c).

With respect to the non-military affidavit, before a default judgment can be entered for a plaintiff, the SCRA commands that the Court "require the plaintiff to file with the court an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit."  50 U.S.C. App. § 521; *ADI Glob. Distribution v. Green*, No. 20-CV-03869 (AMD) (JMW), 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023) (same), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023). The SCRA requirement is inapplicable here because L&J is a corporation. (*See* ECF No. 19-7 at ¶ 15); *see also Guanglei Jiao v. Shang Shang Qian Inc.*, No. 18-CV-5624 (ARR) (VMS), 2020 WL 6370148, at *9 (E.D.N.Y. Aug. 11, 2020), *report and recommendation adopted*, 2020 WL 5105063 (E.D.N.Y. Aug. 31, 2020) (only applying service members civil relief act to the individual defendants).

Here, the motion against the L&J complies with Local Rule 7.1 and Local Rule 55.2(a)(2) because it includes (1) a notice of motion (ECF No. 19); (2) a memorandum of law (ECF No. 19-8); (3) affidavits and exhibits to support Plaintiffs contentions (*see* ECF Nos. 19-1; 19-2; 19-3; 19-4; 19-7); and (4) a proposed order detailing the proposed judgment. (ECF No. 19-9.)  The motion further complies with Local Rule 55, as Plaintiffs properly attached and submitted a declaration affirming that the Certificate of Default was entered by the Court on July 31, 2024 (ECF No. 19-7, Bruno Decl. at ¶ 7) and a declaration that L&J is not an infant, in the

military, or an incompetent person. (ECF No. 19-7, Bruno Decl. at ¶ 15.) Plaintiffs also filed an affidavit of service of the requisite documents as to L&J. (ECF No. 20.)

Finally, Plaintiffs adhered to Local Rule 55.2(c) by filing a statement of damages demonstrating the proposed damages and basis for the element of damages. E.D.N.Y. Local R. 55.2(c). As to damages, Plaintiffs submit itemized breakdowns of the amount of withdrawal liability they are owed, the interest due on withdrawal liability and unpaid contributions, and an Affidavit of Kelli McInnis detailing Plaintiffs' entitlement to withdrawal liability, unpaid contributions, interest, liquidated damages, and attorney's fees and costs. (*See* ECF Nos. 19-1; 19-4; 19-6; 19-9; *see also* ECF No. 22.)

Accordingly, the undersigned finds that Plaintiffs' Motion for Default Judgment is procedurally proper and turns to the merits of the Motion.

## II.    **Default Factors**

In evaluating whether to grant a default judgment, courts consider: (i) whether the defendant's default is willful; (ii) whether the defendant has a meritorious defense to plaintiff's claims; and (iii) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied. *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013). Consideration of these three factors counsels toward an entry of default judgment where, as here, L&J has wholly failed to appear and present any defense, and Plaintiffs are left with no further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (noting that when a defendant is continuously and completely unresponsive the

8

failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013).

## I.   <u>Jurisdiction</u>[2]

### a. **Personal Jurisdiction**

When a defendant fails to appear, "before a court grants a motion for default judgment it may first assure itself that it has personal jurisdiction over the defendant." *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d Cir. 2010). Since a judgment rendered against a defendant over whom the Court does not have personal jurisdiction can be vacated pursuant to Rule 60(b)(4), it "'preserves judicial economy for the court to assess personal jurisdiction from the outset and thereby avoid rendering a void judgment.'" *ADI Glob. Distribution*, 2023 WL 3355049, at *3 (citation omitted). Here, a *sua sponte* assessment of personal jurisdiction is appropriate because the Defendant has failed to appear in this action. *Id.*

For a court to exercise personal jurisdiction: (i) a plaintiff must complete proper service of process, (ii) there must be a statutory basis for personal jurisdiction that renders such service of process effective, and (iii) the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673. F.3d 50, 60–61 (2d Cir. 2012).

As an initial matter, service was procedurally proper here. Rule 4(c) requires that a summons must be served with a copy of the Complaint and by a person who is at least 18 years old and not a party to the case. *See* Fed. R. Civ. P. 4(c). Further, Rule 4(h) provides that a domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by

---

[2] Subject matter jurisdiction in this case is predicated under federal question jurisdiction pursuant to 28 U.S.C. § 1331 under ERISA. (*See* ECF No. 12 at ¶ 3.)

appointment or by law to receive service of process . . . ."  *See* Fed. R. Civ. P. 4(h)(1)(B); *Hartford Fire Ins. Co. v. Queens Cnty. Carting, Inc.*, No. 20-CV-01844 (NSR), 2022 WL 254367, at *2 (S.D.N.Y. Jan. 27, 2022) (quoting Fed. R. Civ. P. 4(h)(1)(A); (e)(1)) ("Under Rule 4(h)(1)(A), a corporation may be served 'in the manner prescribed by Rule 4(e)(1) for serving an individual,' which includes 'following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made[.]'"). Under New York law, service on a corporation may be made by "personally delivering to and leaving with the secretary of state or a deputy, or with any person authorized by the secretary of state to receive such service, at the office of the department of state in the city of Albany, duplicate copies of such process together with the statutory fee" and "shall be complete when the secretary of state is so served."  N.Y. Bus. Corp. Law § 306(b)(1).

Here, L&J was served through the New York Secretary of State by delivering two copies to New York State Department of State Authorized Agent, Nancy Dougherty. (ECF No. 15.) Accordingly, service upon Defendant was proper. *See Bergman v. Kids by the Bunch Too, Ltd.*, No. 14-CV-5005 (DRH) (SIL), 2018 WL 1402249, at *4 (E.D.N.Y. Feb. 16, 2018) (holding service was proper where the corporate defendant was served when the Summons and Complaint were delivered to the New York Secretary of State).

### i.  General Jurisdiction

The Court considers this issue in light of the Supreme Court's pronouncements in *Daimler* and *Goodyear*, where the Court noted that other than in "exceptional cases" the exercise of general jurisdiction is confined to a corporation's "place of incorporation and principal place of business." *See Aybar v. Aybar*, 177 N.E.3d 1257, 1265 (2021) (citing *Daimler AG v. Bauman*, 571 U.S. 117, 119 (2014)); *Goodyear Dunlop Tires Operations, S.A.*

*v. Brown*, 564 U.S. 915, 924 (2011)). Here, L&J is a New York corporation with its principal place of business in New York. (ECF No. 12 at ¶ 9.) Accordingly, this Court has general jurisdiction over L&J because it is "at home" in New York.

### i.   Specific Jurisdiction

On the other hand, specific jurisdiction is present when "a [s]tate exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Great W. Ins. Co. v. Graham*, No. 18-CV-6249 (VSB), 2020 WL 3415026, at *10 (S.D.N.Y. June 22, 2020) (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)). However, having found general jurisdiction is present, a finding of specific jurisdiction is not required. *See Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 397 n.1 (S.D.N.Y. 2004) ("Where general jurisdiction is asserted, the claim need not arise out of the defendant's contacts with the forum state ….")

### III.   Liability

#### a.   *Unpaid Contributions*

ERISA requires an employer to make contributions to multiemployer benefit plans under a CBA in accordance with the CBA's terms.  *See LaBarbera v. J.D. Collyer Equip. Corp.*, 337 F.3d 132, 134 (2d Cir. 2003); 29 U.S.C. § 1145.  Plaintiffs allege that L&J was an "employer" within Section 3(5) of ERISA, 29 U.S.C. §1002(5), that was bound by the employment terms and conditions under the CBA. (ECF No. 12 at ¶ 8; ECF No. 19-1, McInnis Aff. at ¶ 7.) Plaintiffs aver that they are entitled to "delinquent contributions owed to the Fund in accordance with 29 U.S.C. § 1145."[3] (ECF No. 19-9.)  According to the CBA, L&J was required to "remit monthly

---

[3] Section 1145 states: "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

contributions to the Fund for all eligible employees covered by the CBA." (ECF No. 19-1, McInnis Aff. at ¶ 8.) Specifically, Plaintiffs contend that at the time that L&J ceased operations, it failed to pay contributions owed to the Fund from May 2023—when LJ ceased remitting contributions to the Fund—through October 2023—when LJ terminated its participation in the Fund. (ECF No. 19-1, McInnis Aff. at ¶¶ 9, 10, 17.)

According to Plaintiffs' submissions, the total amount of unpaid contributions owed, excluding interest, is $3,203.20.[4] (ECF No. 19-5.) This amount is comprised of a monthly amount of $492.80 per month for May, July, August, and October of 2023, in addition to $616.00 per month for June and September of 2023. (*See* ECF No. 19-5.)

Plaintiffs' well-pleaded allegations and detailed entitlement to the unpaid contributions, coupled with Defendant's default, establish that L&J failed to properly report and remit contributions on behalf of employees covered by the CBA. *See Finkel v. Triple A Group, Inc.*, 708 F. Supp. 2d 277, 281 (E.D.N.Y. 2010) (order adopting Report and Recommendation recommending defendant be found liable for unpaid contributions where plaintiff alleged defendant was an employer "as defined by ERISA," that the parties entered into a CBA, and defendant failed to make contributions for specific time periods in violation of the CBA); *see also Finkel v. Omega Communication Services, Inc.*, 543 F. Supp. 2d 156, 160 (E.D.N.Y. 2008) (order adopting Report and Recommendation granting default for unpaid contributions where plaintiffs allegations regarding defendant's obligation to remit contributions on behalf of employees covered by a CBA was supported by the submitted detailed breakdown of unpaid

---

[4] Plaintiffs note that the amount submitted in their letter to L&J, initially advising it of its obligation to pay such outstanding contributions, was incorrect due to a clerical error. (*See* ECF No. 19-1, McInnis Aff. at ¶ 20, n.1; *see also* ECF No. 19-8 at p. 2 n.1.)

contributions owed for specific months). Accordingly, the undersigned recommends an award of $3,203.20 for unpaid contributions.

### b. *Withdrawal Liability*

Pursuant to 29 U.S.C. § 1381(a), "[i]f an employer withdraws from a multiemployer plan in a complete withdrawal or a partial withdrawal, then the employer is liable to the plan in the amount determined under this part to be the withdrawal liability." Under § 4203(a) of ERISA, "a complete withdrawal from a multiemployer plan occurs when an employer—(1) permanently ceases to have an obligation to contribute under the plan; or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a).

"Following withdrawal from a plan, the fund is vested with authority to determine the amount of withdrawal liability. It must then notify the withdrawing employer of its withdrawal liability, set a payment schedule, and formally demand payment." *Gesualdi v. Seacost Petroleum Prod., Inc.*, 97 F. Supp. 3d 87, 97 (E.D.N.Y. 2015) (citations omitted). "[T]he notice must include the amount of the liability, a schedule for liability payments, and a demand for payment in accordance with the schedule." *Amalgamated Lithographers of Am. v. Unz & Co. Inc.*, 670 F. Supp. 2d 214, 221 (S.D.N.Y. 2009) (citing 29 U.S.C. § 1399(b)(1)). Once an employer receives notice, it has sixty days to begin payment in accordance with the payment schedule irrespective of whether it requests review of the decision. *Id.* (citing 29 U.S.C. § 1399(c)(2)).

An employer is considered in "default" in making payments pursuant to the payment schedule upon: "the failure of an employer to make a scheduled payment, when that failure is not cured within 60 days after written notification from the plan of the failure; or 2) any event defined in rules adopted by the plan that indicates a 'substantial likelihood' that the employer will be unable to pay withdrawal liability." *Id.* (citing 29 U.S.C. § 1399(c)(5)(A) and (B)). Upon

default, "the plan may require immediate payment of the entire unpaid amount of the employer's withdrawal liability, plus accrued interest on the total outstanding liability from the date of the first scheduled payment that was not timely made." *Id.* (citing 29 U.S.C. § 1399(c)(5)). Indeed, disputes related to withdrawal liability assessments are settled through arbitration in the first instance, and that process must be initiated by the earlier of 60 days following notification to the employer regarding the post-review decision or 180 days after the employer requests review. *Id.* (citing 29 U.S.C. § 1401(a)(1)). "Failure to demand arbitration within the statutory time frame bars the employer from contesting liability for the amount demanded." *Id.* (citing 29 U.S.C. § 1401(a)(1), (b)(1); *ILGWU National Retirement Fund v. Levy Bros. Frocks, Inc.*, 846 F.2d 879, 885–87 (2d Cir.1988)).

Here, Plaintiffs allege that L&J's obligation to make contributions to the Fund ceased when it terminated its participation in the Fund, resulting in "a complete withdrawal and withdrawal liability under Section 4201 of ERISA." (ECF No. 19-1, McInnis Aff. at ¶ 10.) The Fund subsequently asked its actuary to determine L&J's withdrawal liability who concluded L&J incurred withdrawal liability in the amount of $1,977,839 payable in 80 quarterly installments of $9,635 each. (*Id.* at ¶¶ 11-12; ECF No. 19-2 at pp. 3-6.) The Funds' actuary's undisputed report establishes the method in which the withdrawal liability was calculated. (*See* ECF No. 19-2 at pp. 3-6.)

Shortly thereafter, on February 12, 2024, the Fund notified L&J of this liability and payment schedule through a letter sent via certified and regular first-class mail titled "Notice and Demand for Withdrawal Liability." (ECF No. 19-1, McInnis Aff. at ¶ 13; *see also* ECF No. 19-2.) The letter demanded payment in accordance with the payment schedule, the first payment being due February 15, 2024. (*See* ECF No. 19-2.) L&J failed to make the first quarterly

payment of withdrawal liability. (ECF No. 19-1, McInnis Aff. at ¶ 16.) After receiving this letter, L&J neither requested a review of a specific matter relating to the determination of withdrawal liability, nor did it identify any inaccuracy in the determination of benefits in accordance with Section 4219(b)(2) of ERISA. (*Id.* at ¶ 14.) Additionally, L&J failed to initiate arbitration as to the withdrawal liability assessment—thereby waiving its right to contest the assessment pursuant to Section 4221(b)(1) of ERISA. (*Id.* at ¶¶ 14-15.) Plaintiffs then sent L&J another letter by certified mail and first-class mail on February 23, 2024 entitled "Notice of Default of February 15, 2024 Withdrawal Liability Payment and Demand for Unpaid Contributions" which notified L&J that it was in default of the initial quarterly payment and noted that should L&J's default not be cured within sixty days then the Fund would initiate legal action to recover the unpaid withdrawal liability, interest, liquidated damages, legal  and costs. (*Id.* at ¶ 17; ECF No. 19-3.) To date, L&J has not provided any withdrawal liability payments.

Under the present circumstances, Plaintiffs have established L&J's liability for withdrawal liability. *See, e.g., Gesualdi*, 97 F. Supp. 3d at 99, 103 (concluding defendant was responsible for withdrawal liability because of the undisputed report by the funds' actuary setting forth the method in which withdrawal liability was calculated, defendant's failure to request a review of the withdrawal liability determination, and defendant's neglect in initiating arbitration proceedings); *Division 1191 Amalgamated Transit Union—New York Employees Pension Fund v. D & A Bus Co.*, 270 F. Supp. 3d 593, 609 (E.D.N.Y. 2017) (adopting the Report and Recommendation finding plaintiff asserted a viable claim for payment of delinquent withdrawal liability in light of the actuary's report setting forth the amount owed and the fact that the notice and demand for payment with payment schedule was sent via certified mail to defendant, but remained unanswered); *Bakery and Confectionery Union v. Mrs. Maxwell's Bakery, Inc.*, No. 21-

cv-308-RPK-SJB, 2022 WL 18107257, at *5 (E.D.N.Y. Dec. 6, 2022) (determining withdrawal liability was triggered by plaintiff's allegations that defendant failed to make required contributions and thus ceased to have an obligation to contribute to the plan).

Accordingly, the undersigned recommends finding LJ liable for withdrawal liability in the amount of $1,977,839.00.

## IV.    **Damages**

### a.    *Interest on Unpaid Contributions and Withdrawal Liability*

Pursuant to ERISA, if an employer fails to make contributions in accordance with the CBA, the court must award the plan damages as follows:

(A) the unpaid contributions;

(B) interest on the unpaid contributions;

(C) an amount equal to the greater of—

> (i) interest on the unpaid contributions or
>
> (ii) liquidated damages provided for under the plan in an amount not in excess   of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A);

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant; and

(E) such other legal or equitable relief as the court deems appropriate.

*Gesualdi*, 97 F. Supp. 3d at 97 (quoting 29 U.S.C. § 1132(g)(2)).

Further, "ERISA provides that [i]n any action under this section to compel an employer to pay withdrawal liability, any failure of the employer to make any withdrawal liability payment within the time prescribed shall be treated in the same manner as a delinquent contribution (within the meaning of Section 1145 of this title)." *Id.* (internal quotation marks omitted).  Thus,

withdrawal liability "damages are to be calculated 'in the same manner as' unpaid benefit contributions." *Id*. (quoting 29 U.S.C. § 1451(b)).

Pursuant to § 1132, "interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26." Here, no indication has been made that the CBA establishes an interest rate to be applied. As such, § 6621 governs and provides that the interest rate will be the "Federal short-term rate" plus "3 percentage points." 26 U.S.C. § 6621(a)(2). "Section 6621 provides that the interest rate is calculated by adding 3 percentage points to the Federal Short-Term Interest Rate, which changes quarterly, rounded to the nearest full percent." *Health & Welfare Fund of the United Food & Commercial Workers Local 2013, AFL-CI) v. Senior Home Care, Inc.*, No. 21-CV-673 (ENV), 2021 WL 7906557, at *5 (E.D.N.Y. Sept. 20, 2021) (order adopting Report and Recommendation) (citing 28 U.S.C. § 6621(a), (b)). The Federal short-term rate will be determined for the first month in each calendar quarter. *See* 26 U.S.C. § 6621(b). Moreover, interest awarded to ERISA plans should be calculated from the date a missed payment first becomes due. *Trustees of the Soft Drink v. Ditmars Distribs., Inc.*, No. 20-cv-2317 (DRH) (SIL), 2021 WL 3275904, at *5 (E.D.N.Y. June 30, 2021), *report and recommendation adopted*, 2021 WL 3269461 (E.D.N.Y. July 30, 2021).

Plaintiffs affirm that they are entitled to interest on unpaid contributions in the amount of $390.54—a number Plaintiffs arrived at by multiplying an interest rate of 8.2% per annum from the dates these contributions were due to the date Plaintiffs moved for a default judgment. (*See* ECF No. 19-1, McInnis Aff. at ¶ 24); *see also* 26 U.S.C. § 6621(a). Plaintiffs multiplied the daily interest rate on 8.2% – which totals .000224658 per day for one year – by the amount of days that passed from each date the contribution was due through March 31, 2025.

17

Plaintiffs arrived at the 8.2% number by taking the "January 2025 short term rate of 5.2% + 3 percentage points." (ECF No. 19-1, McInnis Aff. at ¶ 20; ECF No. 19-8 at p. 8.) Plaintiffs offer no support for where it arrived at the short-term rate of 5.2%. In fact, the short-term applicable federal rate ("AFR") for January of 2025, was 4.26%, not 5.2%. *See* Index of Applicable Federal Rates (AFR) Rulings, http://apps.irs.gov/app/picklist/list/federalRates.html (last visited Nov. 13, 2025). Courts in this Circuit will utilize the Index of Applicable Federal Rates (AFR) Rulings when configuring the applicable short-term rate under § 6621 in the ERISA context. *See, e.g., 32BJ North Pension Fund v. Nutrition Mgmt. Services Co.*, 935 F.3d 93, 98 n.9 (2d Cir. 2019) (citing the Index of Applicable Federal Rates (AFR) Rulings website to establish the underpayment rate pursuant to § 6621(a)(2)); *Campbell v. Huertas*, No. 20 CV 3471 (KAM) (RML), 2022 WL 1211486, at *7 (E.D.N.Y. Feb. 22, 2022) (concluding the federal short-term rate, according to the Index of Applicable Federal Rates (AFR) Rulings website, as of November 2020 was 0.13% which, after adding three percent and rounding to the nearest percentage point, resulted in a rate of four percent). The application of the Index of AFR Rulings website to determine the short-term rate in ERISA actions also extends nationwide. *See, e.g., Nesse as Trustees of Minnesota Laborers Health and Welfare Fund v. Green Nature-Cycle, LLC*, No. 18-cv-636 (ECT/HB), 2020 WL 2848193, at *4 (D. Minn. June 2, 2020) (referencing the Index of AFR Rulings website to configure the interest rate applicable to unpaid contributions under ERISA).

Pursuant to § 6621, adding 3% to 4.26% totals 7.26% which, rounded to the nearest full percent is 7%. *See* 26 U.S.C. § 6621(b)(3). Accordingly, the interest on unpaid contributions from dates due to the date of the default judgment is amended as follows:

| Due Dates | Amount | Interest Rate | Days to March 31, 2025 | Daily Rate (Interest Rate (7/365)) | Total Interest Accrued (Daily Rate (x) Days (x) Amount) |
|---|---|---|---|---|---|
| May 1, 2023 | $492.80 | 7% | 700 | .000192 | $66.23 |
| June 1, 2023 | $616.00 | 7% | 669 | .000192 | $79.12 |
| July 1, 2023 | $492.80 | 7% | 639 | .000192 | $60.46 |
| August 1, 2023 | $492.80 | 7% | 608 | .000192 | $57.53 |
| September 1, 2023 | $616.00 | 7% | 577 | .000192 | $68.24 |
| October 1, 2023 | $492.80 | 7% | 547 | .000192 | $51.76 |
| | $3,203.20 | | | | $383.34 |

It is therefore recommended that interest be awarded on unpaid contributions in the amount of $383.84 through March 31, 2025, and at a daily rate of .000192 per day thereafter until the entry of judgment.

Similarly, Plaintiffs seek interest on the unpaid withdrawal liability amount in the amount of $151,964.28.[5] (ECF No. 19-1, McInnis Aff. at ¶¶ 22-23; ECF No. 19-4.) "As to interest on the withdrawal liability, 'ERISA directs courts to use the "rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."'" *Gesualdi v. D. Gangi Contracting Corp.*, No. 18-cv-3773-FB-SJB, 2019 WL 1130729, at *6 (E.D.N.Y. Feb. 11, 2019), *report and recommendation adopted*, 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019) (citations omitted). "'ERISA provides for such an award of interest on outstanding withdrawal liability from the "due date of the first payment which was not timely made."'" *Id.* (quoting *Finkel v. Captre Elec.*

---

[5] While Plaintiffs submitted a Statement of Damages stating it was owed $162,184.10 as interest on unpaid withdrawal liability from due dates through March 31, 2025 (ECF No. 22), the figure of $151,964.28 is the mathematically correct amount.

*Supply Co.*, No. 14-CV-3584, 2015 WL 5316257, at *3 (E.D.N.Y. July 31, 2015), *report and recommendation adopted*, 2015 WL 5330388 (E.D.N.Y. Sept. 11, 2015); *see* 29 C.F.R. § 4219.32(d) ("Except as otherwise provided in rules adopted by the plan, the due date from which interest accrues shall be, for an overdue withdrawal liability payment and for an amount of withdrawal liability in default, the date of the missed payment that gave rise to the delinquency or the default.").

Here, L&J became liable for the entire assessment of withdrawal liability on April 23, 2024, 60 days after the Fund sent L&J a notice of default warning that such liability would result if it did not remit the first quarterly payment to the Fund. (*See* ECF No. 19-1, McInnis Aff. at ¶ 21). Plaintiffs, therefore, multiplied their submitted interest rate of 8.2% – which totals .000224658 per day for one year – by the withdrawal liability amount – $1,977,839.00 – by the amount of days that passed from the date the contribution was due through March 31, 2025 – 342 days. (ECF No. 19-4.)

As noted above, however, the appropriate interest rate to be applied is 7% which alters the interest calculations on withdrawal liability as follows:

| Due Dates | Amount | Interest Rate | Days | Daily Rate (Interest Rate (7/365)) | Total Interest Accrued (Daily Rate (x) Days (x) Amount) |
|---|---|---|---|---|---|
| April 23, 2024-March 31, 2025 | $1,977,839.00 | 7% | 342 | .000192 | $129,872.82 |

Accordingly, the undersigned recommends awarding interest on withdrawal liability in the amount of $129,872.82 through March 31, 2025, and at a daily rate of .000192 per day thereafter until entry of judgment. *See Demopoulous v. Sweet Clover Farms Inc.*, No. 17 CV 7269 (ARR) (CLP), 2019 WL 13470576, at *5 (E.D.N.Y. Mar. 7, 2019).

### b. *Liquidated Damages*

Plaintiffs aver that they are also entitled to liquidated damages in the amount of $152,354.82, the total interest purportedly owed to the Fund. (ECF No. 19-1, McInnis Aff. at ¶¶ 25-28; ECF No. 19-9.) Plaintiffs are entitled to liquidated damages in an amount equal to the greater of "(i) the interest charged on the unpaid contributions, or (ii) a liquidated damages award equal to 20 percent of the unpaid contributions." *See Gesualdi*, 97 F. Supp. 3d at 104 (citing 29 U.S.C. §§ 1132(g), 1451(b)). Here, the total interest owed to Plaintiffs is $130,256.66 ($383.84 in interest from unpaid contributions (+) $129,872.82 in interest from withdrawal liability), a figure larger than 20% of the unpaid contributions. Accordingly, the undersigned recommends that Plaintiffs be entitled to liquidated damages in the amount of $130,256.66.

### c. *Attorneys' Fees and Costs*

Plaintiffs maintain that the Fund is entitled to an award of $8,450 in attorneys' fees and $1,476.02 in costs pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2). (ECF No. 19-9.) ERISA expressly provides for a mandatory award of "reasonable attorney's fees and costs of the action, to be paid by the defendant[.]" 29 U.S.C. § 1132(g)(2)(D); *see Lanzafame v. L & M Larjo Co.*, No. 03-CV-3640, 2006 WL 2795348, at *6 (E.D.N.Y. Sept. 26, 2006) ("Section 1132(g) mandates an award of reasonable attorney's fees in ERISA actions brought by fiduciaries to enforce the terms of a collectively bargained agreement.").

This Court "enjoys broad discretion in determining the amount of a fee award." *Vincent v. Comm'r of Soc. Sec.*, 651 F.3d 299, 307 (2d Cir. 2011). When considering applications for attorneys' fees, courts apply the lodestar method. *Kazadavenko v. Atl. Adult Day Care Ctr. Inc.*, No. 21-CV-3284 (ENV)(LB), 2022 WL 2467541, at *4 (E.D.N.Y. Apr.

21

14, 2022).  The lodestar calculation, which is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," "creates a presumptively reasonable fee." *Millea v. Metro-N. R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  In utilizing the lodestar approach, courts multiply the number of hours spent on a case by an attorney's reasonable hourly rate. *Id.*  The lodestar method is the acceptable means of achieving a reasonable attorneys fee in ERISA cases. *See A.S.C. Contracting Corp. v. Local Union 175 Welfare Fund*, No. 08 Civ. 2504 (BMC) (JO), 2011 WL 13299956, at *2 (E.D.N.Y. Mar. 18, 2011).

Here, Plaintiffs' counsel, Susan Bruno, a partner at Cary Kane PLLC who serves as legal counsel to the Fund, provided billing records with an itemized breakdown of hours and descriptions of each task completed. (*See* ECF No. 19-6.) Those records reflect that Bruno worked 16.9 hours on this case at a rate of $500 per hour. (*Id.*) The hours expended are reasonable for this case. *See Local 1992 Pension Fund v. A-G Elec. Supply Co. Inc.*, No. 21-CV-03441 (JMA) (JMW), 2023 WL 5003618, at *10 (E.D.N.Y. July 19, 2023) (concluding 16.8 hours was reasonable in the ERISA default judgment context), *report and recommendation adopted*, 2023 WL 5002809 (E.D.N.Y. Aug. 4, 2023).

Further, Bruno's declaration reflects that she possesses 20 years' experience in ERISA litigation and routinely handles matters for the Fund and has done so since November 2013. (ECF No. 19-7 at ¶¶ 18-21.) Additionally, Bruno has spent most of her legal career, which began in 1987, by handling ERISA litigations, providing extensive legal representation pertaining to multiemployer benefit funds, and serving as in-house counsel in litigation departments of Metropolitan Life Insurance Company and the Home Life Insurance Company. (*Id.* at ¶¶ 20-21.) Moreover, the submitted billing records illustrate that Bruno predominately spent her time preparing the Complaint and relevant forms, researching and drafting the default judgment

documents, communicating with and gathering information on participating employers and process servers, and preparing and filing the request for default certification and corresponding affidavits. (*See id.* at ¶ 22; *see also* ECF No. 9-6.)

Her declaration states that Susan Bruno billed $8,450 for a total of 16.9 hours of work from April 12, 2024 to August 7, 2024 at a rate of $500 per hour. (ECF No. 19-7 at ¶ 17.) Though experienced in ERISA litigation like the present default judgment matter, "[c]ourts in this district typically award hourly rates ranging from $300 to $450 per hour for partners in ERISA cases." *Gesualdi*, 97 F. Supp. 3d at 97 (collecting cases); *Hammell v. Pilot Prods. Inc. Defined Benefit Pension Plan*, No. 21-cv-0803 (BMC), 2025 WL 71705, at *2 (E.D.N.Y. Jan. 10, 2025) ("In the Eastern District, the prevailing hourly rate for ERISA cases ranges from $200 to $450 per hour for partners, from $100 to $300 per hour for associates, and from $70 to $100 per hour for paralegals.") (citing *Kindle v. Dejana*, 308 F. Supp. 3d 698, 712 (E.D.N.Y. 2018)).

Courts in this District routinely reduce rates exceeding $450 per hour to conform to the overwhelming majority of cases finding $450 reasonable for partners with Bruno's level of experience. *See e.g., Restrepo v. Inline Cable Corp.*, No. 24 CV 4831 (OEM) (RML), 2025 U.S. Dist. LEXIS 174926, at *14 (E.D.N.Y. Sept. 8, 2025) (reducing the partner's rate from $475 to $450), *report and recommendation adopted*, 2025 U.S. Dist. LEXIS 187035 (E.D.N.Y. Sept. 23, 2025); *Annuity v. CM Ashland Constr. Corp.*, 780 F. Supp. 3d 409, 415 (E.D.N.Y. 2025) (confirming the attorney's hourly rate of $445.00 for an ERISA attorney was reasonable in light of her over twenty years of ERISA litigation experience).

It is therefore recommended that Susan Bruno's hourly rate be reduced to $450 per hour, and that the total attorneys' fees awarded be reduced from the requested $8,450 to $7,605—the byproduct of $450 per hour (x) 16.9 hours.

In addition to attorneys' fees, the Fund incurred costs of $1,476.02 in this litigation, comprised of a $405 filing fee and $1,071.02 for service of process attempts on L&J and "attempted service of process on the other defendants." (ECF No. 9-7 at ¶ 23.) These costs are documented through the submitted billing records (*see* ECF No. 19-6) and explained through the Declaration in Support of Motion for Default Judgment by Susan Bruno. (ECF No. 19-7 at ¶ 23.) Notably, such a large cost amount accounts for the "significant difficulties" the process servers faced in effectuating service. (ECF No. 19-7 at ¶ 23.) Specifically, though L&J was properly served through the Secretary of State, the Secretary of State supposedly "sent the Fund's papers to another entity also named 'L&J Trucking' which had no connection with the defendant L&J or the Fund." (*Id.*) Consequently, the Fund was forced to re-serve the Secretary of State. (*Id.*)

A party can typically recover "[c]osts relating to filing fees, process servers, postage, and photocopying[.]" *Feltzin v. Union Mall LLC*, 393 F. Supp. 3d 204, 219–20 (E.D.N.Y. 2019) (internal quotation marks omitted).  A request for costs must be supported by adequate documentation and the burden rests on the party moving for costs to prove the reasonableness of each charge. *Id.*  Notably, "the decision of whether to award costs . . . 'is committed to the sound discretion of the district court.'" *Swiatkowski v. Citibank as Citigroup*, 745 F. Supp. 2d 150, 174 (E.D.N.Y. 2010) (quoting *Cosgrove v. Sears, Roebuck, Co.*, 191 F.3d 98, 102 (2d Cir. 1999)).

Here, the billing records and docket indicate that Plaintiffs paid a $405 filing fee to initiate the action which suffices as adequate documentation for this cost to be reimbursed. (ECF No. 1; ECF No. 19-7 at ¶ 23; ECF No. 19-6); *see Finkel v. Firequench, Inc.*, No. 23-CV-4868, 2024 WL 320870, at *8 (E.D.N.Y. Jan. 29, 2024) (concluding plaintiff was entitled to an award of costs for the filing fee "which is recoverable because the docket indicates the filing fee was

paid."); *see also Feltzin*, 393 F. Supp. 3d 204, 220 (noting certain costs, such as filings fees, "are recoverable without supporting documentation if verified by the docket").

Moreover, the submitted billing records and declaration by Susan Bruno evidence five attempts to serve process for a sum of $1,071.02.[6] (*See* ECF No. 9-6 at p. 2; ECF No. 9-7 at ¶ 13.) These two forms of proof together form the basis for "adequate documentation" and warrant an award of costs for the service of process charges. *See Jones v. Pawar Bros. Corp.*, No. 17-CV-3018 (PKC) (SJB), 2023 WL 6214213, at *13 (E.D.N.Y. Sept. 25, 2023) (concluding plaintiff's submission "adequately document" the costs, which included costs for serving process, where it submitted "an itemized billing invoice documenting the expenses and a declaration in support of its contents"). Additionally, Plaintiffs are entitled to reimbursement for costs spent in their service attempts. *See Trs. of Empire Carpenters Welfare, Pension Annuity, Apprenticeship, Charitable Trust, Labor Mgmt. and Scholarship Funds v. Protrac Constr., Inc.*, No. CV 11-2288 (ADS) (GRB), 2013 WL 991616, at *7 (E.D.N.Y. Feb. 10, 2013) (permitting recovery of process server costs in an ERISA action, most of which "was invested in unsuccessful attempts at service"), *report and recommendation adopted*, 2013 WL 991589 (E.D.N.Y. Mar. 12, 2013). Accordingly, it is recommended that $1,476.02 in costs be awarded.

---

[6] Individually, as indicated in the billing records (ECF No. 19-6), Plaintiffs spent $320.38, $197.44, $185.38, $182.44, and $185.38 in their service attempts.

## CONCLUSION

For the foregoing reasons, the undersigned recommends **GRANTING** Plaintiffs' motion for default judgment (ECF No. 19) and awarding damages in the following amounts:

(i)      Unpaid Contributions: $3,203.20

(ii)     Withdrawal Liability: $1,977,839.00

(iii)    Interest on Unpaid Contributions: $383.84 plus daily interest at a rate of .000192 per day until entry of judgment

(iv)     Interest on Withdrawal Liability: $129,872.82 plus daily interest at a rate of .000192 per day until entry of judgment

(v)      Liquidated Damages: $130,256.66

(vi)     Attorney's Fees: $7,605

(vii)    Costs: $1,476.02

## OBJECTIONS

A copy of this Report and Recommendation is being electronically served through ECF on all counsel. Counsel for Plaintiff is directed to serve copies of this Report and Recommendation upon Defendant on or before December 3, 2025, and file proof of service of same on ECF. Any written objections to this Report and Recommendation must be filed within fourteen (14) days of service of this Report.  28 U.S.C. § 636(b)(1) (2006 & Supp. 2011); Fed. R. Civ. P. 6(a), 72(b); *see also Nambiar v. The Central Orthopedic Group LLP*, No. 24-1103 (2d Cir. Oct. 28, 2025) (addressing timing and scope of objections to Reports and Recommendations) . Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days precludes further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas*

*v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (summary order) (same).

Dated:   Central Islip, New York
         November 19, 2025

RESPECTFULLY RECOMMENDED,

/S/ *James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge

27